# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDSTEIN et. al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>                                    Defendant. | Case No.:  3:19-cv-01778-H-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 31.] |

On September 16, 2019, Plaintiffs Matt Goldstein, Percy Sutton, Julian Wilder, Lana Savage, Gladys Tubbs, Kendra Piazza, and Rafael Martinez brought this putative class action against General Motors LLC ("GM") for, among other things, purported breaches of express and implied warranties, and violations of various consumer protections laws based on allegedly defective Cadillac User Experience ("CUE") navigation and radio touch screen displays in 2013-2017 Cadillac ATS, SRX and XTS vehicles and 2014-2017 Cadillac CTS, ELR, and Escalade vehicles (the "Class Vehicles"). (Doc. No. 1.) Plaintiffs seek to represent a nationwide class of "all persons and entities in the United States who purchased or leased a Class Vehicle." (Doc. No. 24 at 105.)  Plaintiffs also intend to seek certification of various subclasses for purchasers in Alabama, California, Florida, Indiana,

Iowa, Kansas, Maine, Maryland, Michigan, New Jersey, New York, North Carolina, Texas, and West Virginia. (Id.)

On December 2, 2019, Plaintiffs filed the First Amended Complaint. (Doc. No. 24.) On January 24, 2020, Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. No. 31.) On February 28, 2020, Plaintiffs filed their Opposition. (Doc. No. 37.) On March 20, 2020, Defendant filed its Response. (Doc. No. 42.) On April 6, 2020, the Court held a hearing. Tarek H. Zohdy and Russell D. Paul appeared for the Plaintiffs and Andrew John William Holmer, Allyson Marie McKinstry, and Kathleen Taylor Sooy appeared for the Defendant. For the following reasons the Court grants in part and denies in part Defendant's motion to dismiss.

## I. Background

In this putative class action, Plaintiffs are purchasers of new and used Cadillacs from fourteen different states. (Doc. No. 24 at ¶¶20-48.) Six plaintiffs are citizens of California (collectively, the "California Plaintiffs"), and the remaining twenty-three plaintiffs are residents in thirteen different states: Alabama, Florida, Indiana, Iowa, Kansas, Maryland, Maine, Michigan, New Jersey, New York, North Carolina, Texas, and West Virginia (the "Non-California Plaintiffs"). (Id. ¶¶26-48.) Plaintiffs allege that the in-vehicle infotainment device, also known as the CUE, used in the Class Vehicles is defective. (Id. at ¶79.) The infotainment device is comprised of a touch screen module that provides "entertainment and information delivery to drivers." (Id.) The CUE controls the audio, phone, and climate inputs for the car and displays the rear-view camera when the vehicle is in reverse. (Id. ¶¶63-69.)

## **The Alleged Defect**

The CUE is made of two major components: a projected capacitance touch screen and a plastic cover. (Id. at ¶¶74-77.) Plaintiffs allege that the CUE is defective. First, Plaintiffs allege that the "plastic cover is prone to delaminating or separating from the touch screen glass." (Id. at ¶79.) When the plastic cover separates, Plaintiffs allege, it causes a

"spider-web-like pattern on the display" to form, which in turn prevents the CUE from recognizing any touch input from a user (the "Defect"). (Id.)

Plaintiffs allege that either mechanical or thermal stress can cause the plastic cover to separate from the touch screen. (Id. at ¶80.) Plaintiffs allege that the CUE is "defectively designed" because of the placement of the screws and rubberized gasket that hold the plastic cover to the frame of the CUE. (Id. ¶82.) The plastic cover is anchored to the touch screen by eight screws. (Id. ¶82.) Plaintiffs allege that only two screws are placed on "the bottom portion of the plastic cover, which causes it to flex and move when pressure is applied." (Id. ¶84.) This, according to Plaintiffs, makes the plastic cover prone to separating from the touch screen glass. (Id. ¶85.) Plaintiffs also allege that the rubber gasket is cut in a way that creates excessive space between the touch screen and the plastic cover which also "allows for more flexibility in the plastic cover, which leads to the spider-webbing defect." (Id.)

Plaintiffs further allege that the plastic cover delaminates as a result of temperature fluctuations. (Id. ¶86.) The touch screen assembly is "made up of materials with different thermal expansion coefficients." (Id. ¶87.) Plaintiffs allege that this difference in the thermal expansion coefficient between the separate materials can "cause delamination between the plastic cover and the touch screen glass." (Id.) Plaintiffs maintain that the defect poses a safety risk and causes unsafe driving by distracting drivers and by not allowing them to make use of the backup camera when in reverse. (Id. ¶¶93-94.)

**Defendant's Alleged Knowledge of the Defect**

Plaintiffs allege that GM "knew, or should have known, about the Defect . . . ." (Id. ¶98.) In support of this allegation, Plaintiffs cite to four service bulletins and service bulletin updates ("Technical Service Bulletins" or "TSBs") that GM allegedly issued to its dealers in the United States between December 2014 to August 2017. (Id. ¶102.) Plaintiffs allege that these Technical Service Bulletins demonstrated that "GM was aware of the Defect and recognized it was covered under its Warranty. . . ." (Id. ¶102.) These TSBs stated that "[s]ome customers may report that their radio screen appears bubbled, crack, or

is delaminating" and directed dealers to "replace the ICS (Integrated Center Stack) by following the SI replacement procedure." (Id.) Plaintiffs also point to various consumer complaints filed with the National Highway Traffic Safety Administration as evidence that GM was aware of the Defect. (Id. ¶¶111-112.) Similarly, Plaintiffs allege that GM was aware of the Defect because of complaints made "by consumers on internet forums" that GM allegedly monitored. (Id. ¶¶112-117.) Plaintiffs argue that GM was aware of these complaints because GM responded to them through online postings through its agents in the various internet forums. (Id.) Lastly, Plaintiffs allege that GM was aware of the Defect "based on the large number of repairs performed to the CUE System's exhibiting delamination and spiderwebbing at its network of dealerships." (Id. ¶118.)

## II. Legal Standards

Defendant moves to dismiss the claims of all Non-Californian Plaintiffs for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and to dismiss the claims of certain Plaintiffs for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Under Rule 12(b)(2), a plaintiff bears the burden of establishing personal jurisdiction. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). "The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." Kellman v. Whole Foods Mkt., Inc., 313 F. Supp. 3d 1031, 1042 (N.D. Cal. 2018) (citing Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)). "Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion," and "conflicts between the facts contained in the parties' [evidentiary submissions] must be resolved in [plaintiff's] favor." Unocal Corp., 248 F.3d at 922 (quoting AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)).

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon

which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Additionally claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

(internal quotation marks omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

### III. Discussion

### 1. Specific Personal Jurisdiction – Non-Californian Plaintiffs

Defendant argues that this Court lacks personal jurisdiction over GM for Non-California Plaintiffs' claims. Personal jurisdiction must exist for each claim asserted against a defendant." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n. 8 (9th Cir. 1977)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted)).

Since the Supreme Court's "seminal decision in International Shoe," courts "have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1779–80 (2017). "The paradigmatic locations where general jurisdiction is appropriate over a

corporation are its place of incorporation and its principal place of business." <u>Ranza v. Nike, Inc.</u>, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014)). Here, there does not appear to be any dispute that GM is incorporated in Delaware and has its principal place of business in Michigan. Thus, the Court cannot exercise general personal jurisdiction over GM, and the only issue is whether the Court can exercise specific personal jurisdiction over GM for the claims of named putative class members arising out of sales that occurred outside of California.

Defendant argues that the Court lacks personal jurisdiction over the Non-California Plaintiffs' claims since these Plaintiffs do "not allege that their vehicles were manufactured, sold, or driven in California . . . ." (Doc. No. 31 at 8.) GM argues that there is no connection between California and the individual claims of the Non-California Plaintiffs. (<u>Id.</u>) In support of this argument, GM cites <u>Bristol-Myers Squibb Company v. Superior Court of California, San Francisco Cty.</u>, 137 S. Ct. 1773, 1780 (2017).

In <u>Bristol-Myers,</u> Plaintiffs around the country sued Bristol-Myers Squibb Company ("BMS") in a mass action in California state court, alleging that its drug Plavix damaged their health and violated various California products liability, negligent misrepresentation, and misleading advertising laws. BMS challenged whether the Court had jurisdiction over the claims of the out of state Plaintiffs. The California Supreme Court found that the California court had specific jurisdiction over BMS utilizing a "sliding scale approach" where "the more wide ranging the forum contacts, the more readily is shown a connection between the forum contacts and the claim." <u>Bristol-Myers</u>, 137 S.Ct. at 1773. The Supreme Court reversed, holding that there "must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" <u>Id.</u> (citing <u>Goodyear</u>, 564 U.S. at 919).

The majority opinion, however, did "not confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there," <u>Id.</u> at 1789,

n.4 (Sotomayor, J., dissenting), and "[t]he Ninth Circuit and the Supreme Court [still] have yet to decide this issue." King v. Bumble Trading, Inc., No. 18-CV-06868-NC, 2020 WL 663741, at *4 (N.D. Cal. Feb. 11, 2020). No circuit court has confronted this issue but the overwhelming majority of federal courts that have considered it, in this district and across the county, have held that Bristol-Myers applies to claims brought by named plaintiffs in class actions. See Carpenter v. PetsSmart, Inc., 2020 WL 996947 at *5 (S.D. Cal. Mar. 2, 2020) (holding that "Bristol-Myers Squibb applies in the nationwide class action context"); Sloan v. General Motors LLC., 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019) (same); In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig., 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) (same); See also Morrison v. Ross Stores, Inc., No. 18-CV-02671-YGR, 2018 WL 5982006, at *4 (N.D. Cal. Nov. 14, 2018) ("The requirement to establish personal jurisdiction [in a class action] must be met as to each named plaintiff's claim, with respect to each defendant individually . . . ."); Gaines v. Gen. Motors, LLC, No. 17-CV-1351-LAB (JLB), 2018 WL 3752336, at *3 (S.D. Cal. Aug. 7, 2018) ("The Court agrees with the many other federal courts that have found no reason Bristol-Myers' limitation on personal jurisdiction would not apply to named parties in putative class actions."); Greene v. Mizuho Bank, Ltd., 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017) ("Nothing in Bristol–Myers suggests that it does not apply to named plaintiffs in a putative class action."); Chufen Chen v. Dunkin' Brands, Inc., No. 17-CV-3808CBARER, 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17, 2018) (holding that Bristol-Myers applies to named plaintiffs in the class action context).

Defendant argues that Bristol-Myers, and subsequent district court cases interpreting it's holding, controls the resolution of the Non-California Plaintiffs' claims. (Doc. No. 31 at 8-9.) Defendant contends that since the Non-California Plaintiffs fail to plead any connection between their causes of action and California this Court lacks personal jurisdiction over GM. Plaintiffs argue that Bristol-Myers does not apply to class actions and that since GM has "purposely availed itself of the privilege of conducting activities

within California which gave raise to some of the asserted claims" it is subject to this Court's jurisdiction. (Doc. No. 37 at 4.)

This Court agrees with the cases finding that <u>Bristol-Myers</u> applies to named plaintiffs in class actions for federal courts sitting in diversity. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." <u>Bristol-Myers Squibb,</u> 137 S. Ct. at 1780. "The specific personal jurisdiction inquiry is 'defendant-focused,' with an emphasis 'on the relationship among the defendant, the forum, and the litigation.'" <u>Matus v. Premium Nutraceuticals, LLC,</u> 715 F. App''x 662 (9th Cir. 2018) (quoting <u>Walden v. Fiore,</u> 571 U.S. 277, 284 (2014)). Jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State." <u>Walden</u>, 571 U.S. at 284 (emphasis in original) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)). The primary concern in determining whether personal jurisdiction is present, therefore, is "the burden on the defendant." <u>Bristol-Myers Squibb,</u> 137 S. Ct. at 1780. This burden "encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in *the claims in question.*" <u>Bristol-Myers Squibb</u>, 137 S. Ct. at 1780 (emphasis added). The "claims in question" here for the Non-California Plaintiffs are those related to purchases of Class Vehicles that occurred outside of California. California has little interest in the claims of the Non-California Plaintiffs arising out purchases made outside California from a Delaware company with a principal place of business in Michigan. That GM sold some Class Vehicles in California does not create a sufficient relationship between GM and California such that GM should be subject to specific personal jurisdiction in California for the claims of named class representatives with no connection to California. The federalism concerns that animated the majority's opinion in <u>Bristol-Myers Squibb</u> are equally relevant here and necessitate dismissal for lack of subject matter jurisdiction. The fact that the named Plaintiffs bring their claims as a putative class action does not change this result.

Plaintiffs' reliance on <u>Sotomayor v. Bank of America</u> and <u>Sloan v General Motors LLC</u> is misplaced. Plaintiffs argue that <u>Sotomayor v. Bank of America,</u> 377 F.Supp. 3d 1034 (C.D. Cal. 2019), stands for the idea that "Bristol-Myers does not apply to class actions." (Doc. No. 37 at 3.) However, <u>Sotomayor</u>'s holding was limited to non-named plaintiffs in the class action context. 377 F. Supp. 3d 1034, 1037-38 (C.D. Cal. 2019). Named plaintiffs are still required to demonstrate that the Court's exercise of personal jurisdiction satisfies due process. Plaintiffs' citation to <u>Sloan v. General Motors LLC</u>, 2019 WL 661221 (N.D. Cal. Dec. 5, 2019), is also misplaced. The Sloan court revisited it's finding of pendant jurisdiction in a later opinion and determined that "nearly every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity." <u>Sloan</u>, 2019 WL 661221, at *9.

Accordingly, The Court **GRANTS** Defendant's motion to dismiss the Non-California Plaintiffs with prejudice since amendment would be futile. See <u>Schreiber</u>, 806 F.2d at 1401.

### 2. California Plaintiffs' Magnusson-Moss Warranty Act Claims

Defendant moves to dismiss Plaintiffs' Magnusson-Moss Warranty Act ("MMWA") Claims, arguing that "plaintiffs cannot satisfy the MMWA's express jurisdictional requirements." (Doc. No. 31 at 10.) Defendant argues that to maintain a class action under the MMWA, "the number of named plaintiffs must be at least 100," and here, Plaintiffs only name twenty-nine individual, even including the Non-California Plaintiffs. <u>Id.</u> Plaintiffs argue that the Class Action Fairness Act ("CAFA") allows jurisdiction over MMWA claims that "do not satisfy MMWA's explicit jurisdictional requirements." (Doc. No. 37 at 5.)

Section 2310(d)(3)(C), of the MMWA, states that no claim shall be cognizable in a district court "if the action is brought as a class action and the number of named plaintiffs is less than one hundred." 15 U.S.C. §2310(d)(3)(C). Thus, it provides a necessary condition that class plaintiffs must meet before they can make a MMWA claim, which is a distinct federal cause of action for certain warranty violations. CAFA merely provides a

basis for federal courts to exercise diversity jurisdiction over state law claims between diverse parties. CAFA does not create a cause of action on its own, and it cannot create a cause of action under a separate federal statute if the requirements of that separate statute have not been met. The Court also finds it persuasive that "the weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity jurisdiction under CAFA." Cadena v. Am. Honda Motor Co., Inc., No. 18-4007-MWF, 2019 WL 3059931 at *11 (C.D. Cal. May 29, 2019); see also Patterson v. RW Direct, Inc., No. 18-CV-00055-VC, 2018 WL 6106379, at *2 n.2 (N.D. Cal. Nov. 21, 2018); MacDougall v. Am. Honda Motor Co., No. SA-CV-1701079AGDFMX, 2017 WL 8236359, at *4 (C.D. Cal. Dec. 4, 2017). Accordingly, the Court **GRANTS** Defendant's motion to dismiss the MMWA claim.

### 3. Breach of Express Warranty Claim

Defendant argues that Plaintiffs have not pled a viable claim for breach of the New Vehicle Limited Warranty offered by Cadillac (the "Warranty") because "they do not allege that they (1) experienced the alleged defect during the warranty period; (2) presented their vehicles to GM for repair during the warranty period; and (3) [that] GM refused or failed to repair their vehicles." (Doc. No. 31 at 10.)  Defendant also argues that Plaintiffs allege a design defect which is explicitly excluded from coverage under GM's Limited Warranty. Plaintiffs argue that they have pled a viable claim by alleging that the Defect existed within the Warranty's limits and that, even if they do not, the Warranty's durational limits are unconscionable and should be ignored. (Doc. No. 37 at 7.) Plaintiffs also maintain that the Defect is a result of a "design and/or manufacturing defect" and that both are plausibly covered under the terms of the Warranty. (Id. at 8.)

In California, to state an express warranty claim, "a plaintiff must show that the seller: (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." Rodarte v. Philip Morris, Inc., No. CV-03-0353 FMC (CTx), 2003 WL 23341208, at *5 (C.D. Cal. June 23, 2003);

See <u>Kearney v. Hyundai Motor Am</u>., No. SA-CV-09-1298-JST (MLGx), 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010). "Determining whether [a plaintiff] may pursue an express warranty claim requires a construction of the warranty itself." <u>Kent v. Hewlett-Packard Co</u>., No. 09-5341 JF PVT, 2010 WL 2681767, at *7 (N.D. Cal. July 6, 2010). When the terms of an express warranty require a customer to "seek assistance from [the warrantor's] dealers" in order to "receive service under the warranty," plaintiffs must allege they "sought repairs" in order to allege a breach. <u>In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig</u>., 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010.) Additionally, "[t]he general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." <u>Clemens v. DaimlerChrysler Corp</u>., 534 F.3d 1017, 1023 (9th Cir. 2008). "Every manufactured item is defective at the time of sale in the sense that it will not last forever." <u>Id.</u> "If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires." <u>Id.</u>

The Warranty covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." (Doc. No. 24 at 10.) In order to obtain repairs the vehicle owner must "take the vehicle to a Cadillac dealer facility within the warranty period and request the needed repairs." (<u>Id.</u>) Plaintiffs also allege that the Warranty lasts for "4 years or 50,000 miles, whichever comes first . . . ." (<u>Id.</u> at 11.)

Of the California Plaintiffs, only three (Matt Goldstein, Percy Sutton, and Julian Wilder), allege that they followed the terms of the Warranty and requested repairs from GM. Even if Plaintiffs plead that the durational limit of the Warranty is unconscionable, this does not absolve Plaintiffs of needing to adequately plead that they sought repairs under the terms of the Warranty. See <u>In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig</u>., 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010.)

The remaining California plaintiffs, who sought repairs from GM, are all subject to the durational limits of the Warranty which forecloses their claims for breach of express warranty. The Warranty covered Class Vehicles for four years or 50,000 miles. Plaintiffs Goldstein, Sutton, and Wilder bought the following vehicles respectively: a 2013 Cadillac SRX, a 2013 Cadillac XTS, and a 2014 Cadillac SRX. Accordingly, each of the remaining Plaintiffs claims for breach of express warranty are untenable as the four year period provided by the Warranty has expired for each of the vehicles. Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).

In response, Plaintiffs argue that they have adequately pled that the durational limits of the Warranty are unconscionable. (Doc. No. 37 at 7.) Under California law, "unconscionability has both a procedural and substantive element." Aron v. U–Haul Co. of Cal.,143 Cal.App.4th 796, 808 (Cal. Ct. App. 2006). A contract or contractual clause is invalid as unconscionable only if both elements are present, "although the degree to which each must exist may vary." Id.

Procedural unconscionability exists when a contract reflects "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." Seifi v. Mercedes-Benz USA, LLC, 2013 WL 2285339, at *4 (N.D. Cal. May 23, 2013) (citing A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 486 (Cal. Ct. App. 1982)). Plaintiffs have adequately alleged procedural unconscionability by pleading a gross disparity in bargaining power and a lack of meaningful choice in accepting the Warranty. (Doc. No. 37 at 8.)

The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create "'overly harsh' or 'one-sided' results as to 'shock the conscience.'" Seifi, 2013 WL 2285339, at *5 (citing Aron, 143 Cal.App.4th at 808). Plaintiffs allege that given GM's concealment of the defect, the durational limits of the warranty are unconscionable. In Seifi, the court held that even accepting as true plaintiffs' allegation that the car manufacturer knew about the car's defective gears, plaintiffs failed to sufficiently allege that the warranty durational limits (i.e., either 48

months or 50,000 miles) were unconscionable since these limits did not "on their face shock the conscience." Seifi, 2013 WL 2285339, at *5. Here, GM's warranty is equivalent to the coverage that was at issue in Seifi and does not strike this Court as "overly harsh" or one-sided." Therefore, Plaintiffs' claim of substantive unconscionability fails and the terms of the warranty control. Because Plaintiffs did not satisfy either the repair or duational terms of the Warranty, the Court **GRANTS** Defendant's Motion to Dismiss the express warranty claims of the California Plaintiffs.

### 4. Breach of Implied Warranty

Defendant also moves to dismiss Plaintiffs' implied warranty claims under California's Song-Beverly Consumer Warranty Act and California Commercial Code § 2314. (Doc. No. 31 at 13.) To state a claim under California Commercial Code § 2314 for a breach of the implied warranty of merchantability, a consumer must demonstrate that the good is not "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c). Similarly, the implied warranty of merchantability under California's Song-Beverly Act requires that that goods "[a]re fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a)(2). In the context of vehicles:

> The law is clear that to be fit for its ordinary purpose, a vehicle must be "in safe condition and substantially free of defects." Isip v. Mercedes–Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007). Moreover, it must provide "reliable" transportation. Brand v. Hyundai Motor Am., 226 Cal. App. 4th 1538, 1547 (2014) (quotation omitted). Thus, three factors related to vehicle merchantability are safety, reliability, and substantial freedom from defects.

In re MyFord Touch Consumer Litig., 291 F. Supp. 3d 936, 945-46 (N.D. Cal. 2018) (footnote omitted).

Defendant argues that Plaintiffs have not pled facts that show that their vehicles were not "fit for the ordinary purposes for which such goods are used." (Doc. No. 31 at 27.) Defendant also argues that Plaintiffs have not alleged that the Defect occurred within the term of the warranty, that certain Plaintiffs' claims are time barred, that the purchasers

of used cars do not have a viable claim, and that state law privity requirements bar certain Plaintiffs claims. The Court will address each argument in turn.

### A. Whether Plaintiffs have Pled Unmerchantability

Defendant urges this Court to dismiss Plaintiffs' implied warranty claims because, they argue, Plaintiffs have not pled facts which establish that the Class Vehicles were not fit for their ordinary purpose. Defendant argues that because Plaintiffs do not plead that the alleged Defect has "drastically undermined the ordinary operation of the[ir] vehicles . . . or forced them to stop driving . . . ." they have not made out a case for a breach of implied warranty. (Doc. No. 31 at 13.) Plaintiffs argue that due to the Defect, the CUE "touchscreen becomes "entirely unresponsive" and "was delayed in responding to commands," resulting in its features not working, impairing the vehicles' safety and operability." (Doc. No. 37 at 9-10.) In reviewing a Rule 12(b)(6) motion to dismiss, this Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the claimant. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). Accordingly, based on the allegations in the complaint, the Court declines to dismiss the implied warranty claims for failure to plead facts showing unmerchantability. Plaintiffs have alleged facts regarding the Defect's impact on the safety and reliability of the Class Vehicles that could show that they were unfit for their ordinary purpose.

### B. Whether Plaintiffs' Claims Occurred Within the Term of the Warranty

Next, Defendant argues that Plaintiffs' implied warranty claims should be dismissed because the defect did not occur within the term of the warranty. (Doc. No. 31 at 15.) Defendant argues that the Song-Beverley Act allows a warrantor to limit the terms of the implied warranty "provided that they do so in writing and in conspicuous language." (Id.) Defendant argues that the Warranty provides that "[a]ny implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty." (Id.) Plaintiffs argue that the implied warranty claims are timely because they relate to a latent defect and that the Song-Beverley Act does not require Plaintiffs to have discovered and reported that defect within the

3:19-cv-01778-H-AHG

warranty period, only that they allege that the defect existed within that time or was latent. Plaintiffs are correct.

In <u>Daniel v. Ford Motor Co.</u>, the Ninth Circuit found that Song-Beverley "does not create a deadline for discovering latent defects or for giving notice to the seller . . . ." 806 F.3d 1217, 1223 (9th Cir. 2015). Plaintiffs have pled that the Defect was latent. (Doc. No. 37 at 27.) Accordingly, the Court declines to dismiss the implied warranty claims for occurring outside of the scope of the warranty since Plaintiffs have pled that the Defect was latent and existed within the time period of the Warranty.

### C. Whether California Plaintiffs Uyenoyama and Wilder's Claims are Barred by the Statute of Limitations

Defendant argues that California Plaintiffs Uyenoyama and Wilder are barred from bringing their implied warranty claims under Song-Beverly's statute of limitations. (Doc. No. 31-1.) Song-Beverly's statute of limitations is four years and the discovery rule does not apply to toll the statute of limitations. <u>Mexia v. Rinker Boat Co.</u>, 95 Cal. Rptr. 3d 285, 291-92 (Cal. Ct. App. 2009). However, Plaintiffs argue that "equitable tolling principles – including fraudulent concealment tolling – apply to the statute of limitations for implied warranty of merchantability claims." (Doc. No. 37 at 13.) The Court will now examine whether Plaintiffs have adequately pled fraudulent concealment to equitably toll Song Beverly's statute of limitations.

### D. Fraudulent Concealment

Section 2725(4) of the California Commercial Code states that "[t]his section"—the section providing the statute of limitations for claims brought under the Song-Beverly Act— "does not alter the law on tolling of the statute of limitations." Cal. Com. Code § 2725(4). As the California Supreme Court has explained, in order "[t]o align the actual application of the [statute of] limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods." <u>Aryeh v. Canon Bus. Sols., Inc.</u>, 292 P.3d 871, 875 (Cal. 2013). "These doctrines may alter the rules

governing either the initial accrual of a claim, the subsequent running of the limitations period, or both." Id. In particular, "[t]he doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." Id.

"When a plaintiff alleges the fraudulent concealment of a cause of action, the same pleading and proof is required as in fraud cases: the plaintiff must show (1) the substantive elements of fraud, and (2) an excuse for late discovery of the facts." Finney v. Ford Motor Co., No. 17-cv-06183-JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2008) (citing Community Case v. Boatwright, 124 Cal. Ct. App. 3d 888, 899 (Cal. Ct. App. 1981)). The second element requires a plaintiff to allege "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." Id.; see also Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 744 (Cal. Ct. App. 2007) (explaining fraudulent concealment tolling "will last as long as a plaintiff's reliance on the misrepresentations is reasonable"). "Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)." In re Ford Tailgate Litig., No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D. Cal. Mar. 12, 2014), order corrected on denial of reconsideration, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014).

Defendant argues that Plaintiffs have not met the heighted particularity requirement of Rule 9(b). (Doc. No. 31 at 19.) GM argues that Plaintiffs only provide vague and conclusory allegations regarding GM's failure to disclose the alleged defect as well as Plaintiffs' reliance on any misrepresentation or omission that GM allegedly made. (Id.) Next, Defendant maintains that Plaintiffs have also failed to plausibly plead that GM had exclusive knowledge of the alleged defect at the time of sale. (Id. at 21.) Plaintiffs argue that omission-based fraud claims are subject to a relaxed standard of pleading. (Doc. No. 37 at 32-33.)

Plaintiffs allege that GM, before the time of sale, failed to disclose and actively concealed "a dangerous defect from its customers who purchased or leased" the Class Vehicles. (Doc. No. 24 at ¶¶1, 74-91.) Plaintiffs allege that GM had a duty to disclose the Defect based on its exclusive knowledge. (Id. ¶92-97.) Plaintiffs support these allegations with several Technical Service Bulletins ("TSBs") as well as consumer complaints. (Id. at ¶¶98-120.) Plaintiffs allege that despite their due diligence they were "not reasonably able to discover the problem until the Defect manifested" because it was "undetectable" and GM "failed to disclose or intentionally concealed" it from them. (Id. ¶440.)

A claim based on a nondisclosure or omission is a claim for misrepresentation in a cause of action for fraud, and it must be pleaded with particularity under Rule 9(b). Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir.2009). "To plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." Marolda v. Symantec Corp., 672 F.Supp.2d 992, 1002 (N.D. Cal. 2009). Plaintiffs fail to articulate the who, what, when, where, and how of the misconduct alleged. Nowhere in the complaint do Plaintiffs plead the actual misrepresentation by GM nor do they adequately allege reliance by any individual Plaintiff. Plaintiffs allege in a wholly boilerplate fashion that some Plaintiffs "saw advertising materials concerning [their] vehicle and its various features" and "discussed [their] vehicle with a salesperson." (Doc. No. 24 ¶¶155, 167, 193, 204, 227, 250, 262, 273, 284, 296, 308, 368, 380, 416, 429). This is not enough to satisfy the specificity requirement of Rule 9(b). Accordingly, Plaintiffs Uyenoyama and Wilder's Claims are not subject to tolling and are time barred. The Court **GRANTS** the motion to dismiss Plaintiffs Uyenoyama and Wilder's implied warranty claims under Song-Beverly.

### E. Whether Used Car Purchasers' Implied Warranty Claims Are Excluded

Defendant argues that Song-Beverly excludes claims related to the purchase of used vehicles. Consequently, Defendant maintains that California Plaintiffs Goldstein, Sutton,

and Rodriguez's claims should be dismissed as a matter of law since they purchased used Class Vehicles. Plaintiffs argue that Defendant fails to "cite a single case to support its position . . . ." (Doc. No. 37 at 14.)

Song-Beverly extends to "used goods," but "[i]t shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller)." Cal. Civ. Code § 1795.5(a). In other words, the distributor or retailer is liable for the sale of used products, not the original product manufacturer. See Johnson v. Nissan North America, Inc., 272 F.Supp.3d 1168, 1178-79 (N.D. Cal. 2017). Courts routinely dismiss implied warranty claims for used cars that are directed at the manufacturer. See id.; Blissard v. FCA US LLC., No. LA cv-18-02765 JAK, 2018 WL 6177295, at *9 (C.D. Cal. Nov. 9, 2018.); Hindsman v. Gen. Motors LLC, No. 17-cv-05337-JSC, 2018 WL 2463113, at *14 (N.D. Cal. June 1, 2018). Since California Plaintiffs Goldstein, Sutton, and Rodriguez each purchased used vehicles from independent dealerships, they cannot maintain a claim under Song-Beverley against GM. The Court **GRANTS** the motion to dismiss Goldstein, Sutton, and Rodriguez's implied warranty claims under Song-Beverly.

### F. Whether State Law Privity Requirements Bar Plaintiffs' Claims

Lastly, Defendant argues that all of the California Plaintiffs' implied warranty claims under both Song-Beverly and California Commercial Code § 2314 are barred by state law privity requirements. Defendant maintains that because all "Plaintiffs purchased their vehicles from independent dealerships or at auction, they cannot allege privity with GM . . . ." (Doc. No. 31 at 18.) Plaintiffs reply that there is a "well-established exception to the privity requirement where the consumer is a third-party beneficiary of the contract between the manufacturer and a third-party." (Doc. No. 37 at 15.)

California courts have found an exception to the privity requirement for Song Beverly implied warranty claims in analogous circumstances. See, e.g., Keegan v. American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 947 (C.D. Cal. 2012) (holding that Song-Beverley does not impose a privity requirement); Gonzalez v. Drew Industries, 750

F.Supp.2d 1061, 1072–73 (C.D. Cal. 2007) (finding no privity requirement based on the plain language of the statute); <u>Gusse v. Damon Corp.</u>, 470 F.Supp.2d 1110, 1116 n.9 (C.D. Cal. 2007) (imposing a privity requirement would "ignore[ ] the plain language of the Song–Beverly Act" that all goods sold at retail are accompanied by the manufacturer's implied warranty). Accordingly, the Court declines, at this time, to dismiss the remaining implied warranty claims since Plaintiffs have pled that they were the intended beneficiary of the contract between GM and its dealerships.

However, the Ninth Circuit has made it clear that under California Commercial Code § 2314 "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." 534 F.3d 1017, 1023 (9th Cir. 2008). Plaintiffs have not alleged that they were in vertical privity with GM. Therefore, the Court **GRANTS** Defendant's motion to dismiss the implied warranty claims under California Commercial Code § 2314 of all the California Plaintiffs.

### 5. Common Law Fraud Claims

Next, Defendant argues that Plaintiffs' common law fraud claims should be dismissed because they fail to meet Rule 9(b)'s specificity requirements. Defendant also argues that Plaintiffs have failed to allege that GM had exclusive knowledge of the alleged Defect at the time of sale or that GM had a duty to disclose. Plaintiffs argue that they have met the particularity requirements of Rule 9(b) and established that GM had a duty to disclose the Defect. (Doc. No. 37 at 32-33.)

"A claim for fraud based on concealment or omission requires that: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage." <u>In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.</u>, No. 17-cv-06656, 2019 WL 3000646, at *5 (C.D. Cal. May 22, 2019).

Allegations of fraud must set forth "the who, what, when, where, and how of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted).

The Court has already determined that Plaintiffs have not met the heightened pleadings standards of Rule 9(b) for the claims sounding in fraud. See supra Section 4D. The same analysis holds here as well. The Court **GRANTS** the motion to dismiss the common law fraud claims.

### 6. State Law Consumer Protection Claims

Defendant moves to dismiss Plaintiffs' claims under California's Consumers Legal Remedies Act ("CLRA") and Business and Professions Code § 17200 ("UCL"). Defendant argues that Plaintiffs have failed to plead these claims with the requisite specificity required by Rule 9(b). (Doc. No. 31-1 at 27-28.) Defendant also maintains that some of the claims are time-barred and that the UCL claim is forestalled by the availability of other adequate legal remedies. (Id.)

Plaintiffs' claims under the CLRA and UCL sound in fraud. Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012.) The Court has already addressed whether the claims that sound in fraud are pled with particularity such that they satisfy Rule 9(b). See supra Section 4D. The same analysis holds here as well. Accordingly, the Court **GRANTS** the motion to dismiss the state law consumer protection claims.

### 7. Unjust Enrichment Claims

Plaintiffs bring claims of unjust enrichment as a nationwide class, or, in the alternative on behalf of each of the State Sub-Classes. (Doc. No. 24 at ¶978.) "The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another." Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008) (internal quotation marks, citation, and alteration omitted)

Defendant argues that Plaintiffs do not have standing to bring a nationwide claim for unjust enrichment and that the California claim cannot proceed because Plaintiffs have pled

the existence an express contract. (Doc. No. 31 at 31.) The Court will address each argument now.

First, Defendant argues that Plaintiffs lack standing to bring claims in the states that they do not reside. Plaintiffs argue that the Ninth Circuit's decision in <u>Melendres v. Arpaio</u>, 784 F.3d 1254, 1261-62 (9th Cir.), forecloses this argument because the Circuit adopted a "class certification approach" which found that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." (Doc. No. 37 at 45.) Defendant responds by pointing out that <u>Melendres</u> only related to Plaintiffs who were bringing claims under the laws of one state. (Doc. No. 43 at 14.)

The question here is whether the named Plaintiffs have standing to bring certain claims, not standing "to obtain relief for unnamed class members" for the same injury as was the case in <u>Melendres</u>. <u>See also</u> <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 352 (2006) (Article III must be measured claim-by-claim). Plaintiffs must show they have standing for each claim they raise, and Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection. <u>See</u> <u>Pardini v. Unilever United States, Inc.</u>, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); <u>see also</u> <u>In re Packaged Seafood Prod. Antitrust Litig.</u>, 242 F. Supp. 3d 1033, 1096–97 (S.D. Cal. 2017) (discussing <u>Melendres</u>, 784 F.3d at 1261-62). Accordingly, <u>Melendres</u> does not, in the Court's view, stand for the proposition that this Court must delay its consideration of standing.

The California Plaintiffs have Article III standing to represent a class of purchasers of Class Vehicles who have claims under California law. The question here is whether the California Plaintiffs have standing to assert unjust enrichment claims on behalf of unnamed class members under other states' laws. They do not. Therefore, the nationwide unjust enrichment claims in the FAC on behalf of the "nationwide class," must be dismissed because the California Plaintiffs lack Article III standing to assert claims under those other states' laws.

Next, Defendant argues that Plaintiffs' unjust enrichment claims cannot stand as a matter of California law because Plaintiffs have pled the existence of an express contract. (Doc. No. 31 at 31.) Plaintiffs argue that they should still be able to plead both theories of relief at this juncture. (Doc. No. 37 at 31.) Defendant argues that Plaintiffs did not explicitly plead this theory in the alternative. (Doc. No. 43 at 14.)

Generally, a party "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2-3). The Court declines at this stage of the litigation to dismiss California Plaintiffs unjust enrichment claims premised on California law.

## CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss. (Doc. No. 31.) The Court **GRANTS** Defendant's Rule 12(b)(2) Motion with regard to all Non-California Plaintiffs and **DISMISSES WITH PREJUDICE** those claims. The Court **GRANTS** Defendant's Rule 12(b)(6) Motion with regard to the California Plaintiffs' Magnusson-Moss Warranty Act claims, express warranty claims, implied warranty claims, common law fraud claims, and state consumer protection law claims. The Court **DENIES** Defendant's Rule 12(b)(6) Motion with regard Plaintiff Benito Guzman's implied warranty claim under Song-Beverly and the unjust enrichment claims for all California Plaintiffs to the extent they are premised on California law. Dismissal is with leave to amend, except as otherwise stated above. Plaintiffs may file an Amended Complaint within thirty (30) days of the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

DATED: April 13, 2020

_Marilyn L. Huff_

MARILYN L. HUFF, District Judge