1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

GOLDSTEIN et al.,

Plaintiffs,

v.

GENERAL MOTORS LLC,

Defendant.

Case No.:  3:19-cv-1778-JLS-AHG

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

(ECF No. 55)

Presently before the Court is Defendant General Motors LLC's Motion to Dismiss Plaintiffs' Second Amended Class Complaint.  ("Mot.," ECF No. 55.)  Plaintiffs filed a Response in Opposition to Defendant's Motion ("Opp'n," ECF No. 56), and Defendant filed a Reply ("Reply," ECF No. 58).  The Court took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See generally* ECF No. 61.  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

## BACKGROUND

On May 13, 2020, Plaintiffs filed a Second Amended Complaint in this putative class action against Defendant General Motors LLC.  *See generally* Second Amended Complaint

("SAC," ECF No. 49).  Plaintiffs are six purchasers of new and used Cadillacs in the State of California.  *Id.* ¶¶ 103, 111, 118, 129, 141, 153.  Plaintiffs allege, among other things, purported breaches of express and implied warranties and violations of various consumer protections laws based on allegedly defective Cadillac User Experience ("CUE") navigation and radio touch screen displays in 2013–2017 Cadillac ATS, SRX, and XTS vehicles and 2014–2017 Cadillac CTS, ELR, and Escalade vehicles (collectively, the "Class Vehicles").  *See generally* SAC.

Plaintiffs seek to represent all persons and entities who purchased or leased a Class Vehicle equipped with Defendant's CUE touch screen display in the state of California. *Id.* ¶ 165.  Additionally, Plaintiffs seek to represent a Consumers Legal Remedies Act ("CLRA") Sub-Class of "all members of the Class who are 'consumers' within the meaning of California Civil Code Section 1761(d)."  *Id.*

The CUE "infotainment" system is an audio/visual interface comprised of a touch screen module that provides "entertainment and information delivery to drivers."  *Id.* ¶ 39. The CUE controls the audio, phone, and climate inputs for the car and displays the rear-view camera when the vehicle is in reverse.  *Id.* ¶¶ 40–51.  The CUE is made of two major components: a projected capacitance touch screen and a plastic cover.  *Id.* ¶¶ 56–58.

Plaintiffs allege that the CUE is defective.  *Id.* ¶ 60.  Plaintiffs allege that the "plastic cover is prone to delaminating or separating from the touch screen glass" due to either mechanical or thermal stress.  *Id.* ¶¶ 60, 62.  When the plastic cover separates, Plaintiffs allege it causes a "spider-web-like pattern on the display" to form, which in turn prevents the CUE from recognizing any touch input from a user (the "Defect").  *Id.* ¶ 60.

Plaintiffs allege that the CUE is "defectively designed" because of the placement of the screws and rubberized gasket that hold the plastic cover to the frame of the CUE.  *Id.* ¶ 63.  The plastic cover is anchored to the touch screen by eight screws.  *Id.* ¶ 64.  Plaintiffs allege that only two screws are placed on "the bottom portion of the plastic cover, which causes it to flex and move when pressure is applied."  *Id.*  According to Plaintiffs, this makes the plastic cover prone to separating from the touch screen glass.  *Id.* ¶ 66.  Plaintiffs

also allege that the rubber gasket is cut in a way that creates excessive space between the touch screen and the plastic cover, which "allows for more flexibility in the plastic cover, which leads to the spider-webbing defect." *Id.*  Plaintiffs further allege that the plastic cover delaminates as a result of temperature fluctuations. *Id.* ¶ 67.  The touch screen assembly is "made up of materials with different thermal expansion coefficients." *Id.* ¶ 68. Plaintiffs allege that this difference in the thermal expansion coefficient between the separate materials can "cause delamination between the plastic cover and the touch screen glass." *Id.*  Plaintiffs maintain that the Defect poses a safety risk and causes unsafe driving by distracting drivers and by not allowing drivers to make use of the backup camera when the vehicle is in reverse. *Id.* ¶¶ 73–78.

Plaintiffs allege that Defendant "knew, or should have known, about the Defect . . . ." *Id.* ¶ 79.  In support of this allegation, Plaintiffs cite to four service bulletins and service bulletin updates ("Technical Service Bulletins" or "TSBs") that Defendant allegedly issued to its dealers in the United States between December 2014 and August 2017. *Id.* ¶¶ 82–89.  Plaintiffs claim that these Technical Service Bulletins demonstrated that Defendant "was aware of the Defect and recognized it was covered under its Warranty." *Id.* ¶ 89.  These TSBs stated that "[s]ome customers may report that their radio screen appears bubbled, cracked, or is delaminating" and directed dealers to "replace the ICS (Integrated Center Stack) by following the SI replacement procedure." *Id.* ¶ 83. Plaintiffs also point to various consumer complaints filed with the National Highway Traffic Safety Administration ("NHTSA") as evidence that Defendant was aware of the Defect. *Id.* ¶ 93.  Similarly, Plaintiffs allege that Defendant was aware of the Defect because of complaints made "by consumers on internet forums" that Defendant allegedly monitored. *Id.* ¶¶ 94–99.  Plaintiffs argue that Defendant was aware of these complaints because Defendant responded to complaints through its agents by making online postings in the various internet forums. *Id.*  Lastly, Plaintiffs allege that Defendant was aware of the Defect "based on the large number of repairs performed to the CUE System's exhibiting delamination and spiderwebbing at its network of dealerships." *Id.* ¶¶ 100–02.

**LEGAL STANDARD**

Defendant moves to dismiss Plaintiffs' SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), it does "require[] more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do," *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

Additionally, claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a

plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## ANALYSIS

## I.   Plaintiffs' Fraud Claims

Defendant argues that Plaintiffs' CLRA, unfair competition law ("UCL"), and fraudulent concealment claims should be dismissed based on multiple grounds. Specifically, Defendant argues that (1) the CLRA, UCL, and fraudulent concealment claims sound in fraud and fail to meet Rule 9(b)'s specificity requirements, Mot. at 7–9; (2) the UCL claim is barred by adequate legal remedies, *id.* at 15; (3) the CLRA claim does not properly allege that Defendant had exclusive knowledge of the Defect at the time of sale, *id.* at 9–14, or a duty to disclose the Defect, *id.* at 14–15, and the claim is time-barred

with regard to certain Plaintiffs, *id.* at 15–17; and (4) the fraudulent concealment claim is barred by the economic loss doctrine, *id.* at 17–18.

### A.     Rule 9(b)'s Specificity Requirement

Generally, fraud claims are subject to a heightened pleading standard that requires claims to be pleaded with particularity. *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) ("Fraud must be pleaded with specificity rather than with general and conclusory allegations." (internal quotations and citation omitted)).   However, because fraudulent omission alleges "a failure to act instead of an affirmative act," various district courts in the Ninth Circuit have found that fraudulent omission claims "can succeed without the same level of specificity required by a normal fraud claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (internal quotations omitted). "Despite this distinction, claims sounding in fraud, even concealment or omission claims, still must be pled with particularity." *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 906 (E.D. Cal. 2018) (citing *Kearns*, 567 F.3d at 1127 ("[T]he contention that . . . nondisclosure claims need not be pleaded with particularity is unavailing.")).   Here, Plaintiffs must describe "the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).

With these standards in mind, the Court finds that Plaintiffs have met the specificity requirements of Rule 9(b).   As an initial matter, Plaintiffs' consumer fraud claims are based on Defendant's alleged failure to disclose the Defect. *See, e.g.*, SAC ¶¶ 1–2, 6, 10, 38, 79, 114, 122.   Defendant mistakenly asserts that "Plaintiffs do not identify a specific misrepresentation in any [of Defendant's] materials that they relied on," Mot. at 8, when in fact Plaintiffs' case is premised on Defendant's failure to disclose certain information, not an affirmative misrepresentation, *see* Opp'n at 5 ("[S]ince this is an omissions case, there is no specific misrepresentation to allege.").   Plaintiffs allege that Defendant, before

the time of sale, failed to disclose "a dangerous defect to its customers who purchased or leased . . . vehicles equipped with GM's 'Cadillac User Experience' touch screen display . . . ," SAC ¶ 1, that causes the screen "to spontaneously delaminate, bubble or crack in a 'spider-web' formation.  When this happens, the unit ceases to function properly and is rendered useless," *id.* ¶ 3.  Consequently, the Court finds Plaintiffs have adequately pled the content of the fraudulently omitted information.

Defendant argues that Plaintiffs' descriptions of specific materials and interactions Plaintiffs claim they relied upon in purchasing their vehicle are generic and "[P]laintiffs do not allege any details about the information they reviewed."  Mot. at 8.  Because this is a fraud in the omission case, the Court examines whether Plaintiffs describe "where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations . . . ."  *Marolda*, 672 F. Supp. 2d at 1002.

The Court finds that Plaintiffs have sufficiently pled specific information channels where Defendant could have disclosed the Defect but instead omitted the information.  Among these channels are: Defendant's press releases, SAC ¶¶ 80–81; promotional statements in news articles, *id.* ¶¶ 51–52; advertisements in automotive magazines, ¶ 139; window Monroney Stickers, *id.* ¶¶ 38, 114, 122, 139, 151, 163; interactions with authorized dealerships' salespeople, *id.* ¶¶ 38, 105, 114, 122, 139, 151, 163; and Defendant's own website, *id.* ¶¶ 36, 122.  *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015) ("Plaintiffs presented evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses.  This is sufficient to sustain a factual finding that Plaintiffs would have been aware of the disclosure if it had been made through Ford's authorized dealerships.").  Plaintiffs further allege they relied on emails and conversations with dealership salespeople, but Defendant argues that Plaintiffs do not "allege the substance of these communications or identify any actual misrepresentations by [Defendant] that they relied on."  Mot. at 8 (citation omitted); *see, e.g.*, SAC ¶ 105 ("Mr. Goldstein also exchanged emails with a Fairfield Cadillac

salesperson, and reviewed an email from the Fairfield Cadillac salesperson containing detailed information about the Cadillac SRX's price and features."). Once again, in an omission case the Plaintiffs need not identify a specific misrepresentation, merely identify with specificity the channels of information where the omitted information could have appeared. Plaintiffs have done so here. *See, e.g.*, *Precht v. Kia Motors Am., Inc.*, No. SACV141148DOCMANX, 2014 WL 10988343, at *6 (C.D. Cal. Dec. 29, 2014) (finding the plaintiffs adequately plead UCL and CLRA claims under an omission theory when "[t]he FAC also alleges the channels through which Defendant disseminated information regarding its vehicles . . ."). Plaintiffs have sufficiently identified the channels Defendant utilized to disseminate information about the Class Vehicles to meet Rule 9(b)'s specificity requirement.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' CLRA, UCL, and fraudulent concealment claims to the extent the motion is based on Plaintiffs' failure to adequately plead fraud with specificity.

### B.   UCL

California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." "Because [section 17200] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007). "A UCL action is equitable in nature," and in a private action "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

Defendant argues that Plaintiffs cannot pursue equitable remedies for their UCL claim because they have adequate legal remedies for damages in their CLRA and implied warranty claims, and Plaintiffs' UCL, CLRA, and implied warranty claims are based on the same underlying conduct. Mot at 15. In response, Plaintiffs argue that courts in this

District have rejected Defendant's argument that adequate legal remedies bar a UCL claim in these circumstances.  Opp'n at 15 (citing *Eason v. Roman Catholic Bishop of S.D.*, 2019 WL 4934188, at *5 (S.D. Cal. Oct. 7, 2019); *Wildin v. FCA US LLC*, 2018 WL 3032986, at *7 (S.D. Cal. June 19, 2018)).

Within the Ninth Circuit, "[d]istrict courts are split on whether a plaintiff's claims for equitable relief should be dismissed at the pleading stage."  *Safransky v. Fossil Grp., Inc.*, No. 17CV1865-MMA (NLS), 2018 WL 1726620, at *14 (S.D. Cal. Apr. 9, 2018) (citing *Covell v. Nine W. Holdings, Inc.*, No. 3:17-cv-01371-H-JLB, 2018 WL 558976, at *8 (S.D. Cal. Jan. 15, 2018)); *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017)).  In the absence of controlling Ninth Circuit authority, the Court concludes that Plaintiffs' line of cases reflects the prevailing view within this District and better comports with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency."); *Safransky*, 2018 WL 1726620, at *15 (declining to dismiss claims for equitable relief at the pleading stage); *Covell*, 2018 WL 558976, at *8 (same).  Despite this, Plaintiffs have failed to allege that they and members of the putative class will be irreparably harmed or denied an adequate remedy at law in the absence of equitable relief.  *Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) (affirming dismissal of UCL claim for failing "to plead the inadequacy of their legal remedies").  For this reason, the claim cannot survive.

Accordingly, the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiffs' UCL claim for failure to adequately plead that they have no adequate remedy at law.

### C.   CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  Plaintiffs rely on sections 1770(a)(5) and 1770(a)(7) of the CLRA, which respectively prohibit "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have" and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

9

### 1.     Defendant's Knowledge of the Defect at the Time of Sale

Defendant contends that Plaintiffs do not allege plausible facts establishing that Defendant had exclusive knowledge of the Defect at the time of sale.  Mot. at 9.  Plaintiffs allege Defendant had knowledge of the Defect based on (1) Technical Service Bulletins Defendant issued to its dealers, and/or (2) consumer complaints made to Defendant, the NHTSA, and on third-party websites.  *See generally* SAC ¶¶ 90–99.

"[U]nder the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).  For fraud-based claims, heightened pleading does not apply to allegations regarding a defendant's knowledge or state of mind.  Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (holding that where a plaintiff must make "a showing of the defendants' state of mind, general rather than particularized allegations are sufficient").

### a.     Technical Service Bulletins

Defendant argues that the four TSBs that Defendant issued to its dealers between December 2014 and August 2017 do not plausibly support that Defendant had pre-sale knowledge of the Defect because the TSBs do not mention "safety hazards."  Mot. at 10.  Defendant contends that because the TSBs do not mention the responsiveness or functionality of the CUE system, the TSBs "did not reference the symptom plaintiffs complain about in their vehicles," and therefore do not support finding that Defendant had pre-sale knowledge of the Defect.  *Id.* at 10–11.

Viewed in the light most favorable to Plaintiffs, it is plausible that Defendant was aware of the Defect in the CUE system based on the TSBs.  *See MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) ("One plausible inference that can be drawn from the three TSBs is that Ford was generally aware of problems with the coolant pump, and that despite this awareness it continued to sell vehicles containing the defective part.").

The cases where TSBs did not support a finding of knowledge are distinguishable. In *Mandani v. Volkswagen Group of America, Inc.*, for example, the "TSB noted '[c]lacking or knocking noises,'" but the plaintiff "claimed that his car began 'bucking and jerking . . . .'" No. 17-CV-07287-HSG, 2019 WL 652867, at *7 (N.D. Cal. Feb. 15, 2019). The nature of the defect plaintiff asserted in *Mandani* was different than the problem identified in the TSB; such is not the case here. Rather, the Defect described by Plaintiffs closely matches the language of the TSBs. The TSBs stated that "[s]ome customers may report that their radio screen appears bubbled, cracked, or is delaminating," SAC ¶ 83, and the Plaintiffs describe the Defect as causing the CUE to "spontaneously delaminate, bubble or crack in a 'spider-web' formation," *id.* ¶ 3. This near-identical recitation of the Defect in the TSBs is sufficient to allege Defendant had pre-sale knowledge of the Defect.

Defendant argues that the TSBs were issued after Plaintiffs Uyenoyama and Wilder purchased their vehicles; therefore, there is no evidence Defendant knew of the Defect at the time of their purchases. Mot. at 11. Plaintiff Uyenoyama purchased a Class Vehicle in September 2012, and Plaintiff Wilder purchased a Class Vehicle in 2014 without identifying a purchase month. SAC ¶¶ 118, 129. The first TSB was issued in December 2014. *Id.* ¶ 83. Some courts have found TSBs issued after a plaintiff's purchase can support an inference of pre-sale knowledge. *See MacDonald*, 37 F. Supp. 3d at 1094 (finding TSBs issued five and nine months after the plaintiffs' purchases "plausibly give rise to the inference that Ford knew of the issue prior to their issuance"); *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1058 (C.D. Cal. 2020) ("Because a manufacturer must receive complaints or data raising an issue and then must investigate the issue before issuing a [technical tip ("]TT["]) or TSB, it is reasonable to infer that manufacturers know of the issue prior to the release of the TT or TSB. The Court finds a five-month period between knowledge of the Defect and release of the TT to be plausible at this stage.").

In this case, however, the Court finds Plaintiffs have not plead sufficient facts to infer that Defendant knew of the Defect at the time of Plaintiffs Uyenoyama and Wilder's

purchases.  Without identifying the month of Plaintiff Wilder's purchase, it is impossible for the Court to evaluate the proximity of his purchase to the issuance of the first TSB and determine whether there is a plausible inference Defendant knew of the Defect at that time. Plaintiff Uyenoyama purchased her vehicle more than two years before the issuance of the first TSB.  The remoteness of Plaintiff Uyenoyama's purchase does not give rise of a reasonable inference that Defendant knew of the Defect at the time of her purchase based on the TSBs.

b.   Consumer Complaints

Defendant argues that the consumer complaints made to Defendant, NHTSA, and on a third-party website are inadequate to establish Defendant's knowledge of the Defect. Mot. at 11–12 (citing SAC ¶¶ 8, 93, 95).

The earliest complaints Plaintiffs allege were filed with the NHTSA, CM "Cadillac Customer Care" representatives, and general complaints on the Cadillac Owner/Enthusiast Website and Forum were all from 2016.  *See* SAC ¶¶ 93(a), 96(a), 98(a).  Therefore, these complaints cannot plausibly support a finding of pre-sale knowledge for Plaintiffs Uyenoyama and Wilder's purchases in September 2012 and 2014, respectively.  *See id.* ¶¶ 118, 129.

Plaintiffs have identified several complaints on Cadillacfourms.com from 2014.  *See id.* ¶ 95(a)–(f).  Without a month of purchase for Plaintiff Wilder, it is impossible to evaluate whether these complaints give rise to a reasonable inference of pre-sale knowledge for Plaintiff Wilder's claims.  Therefore, the Court finds that Plaintiffs Uyenoyama and Wilder have not identified with specificity any complaints that predate their purchases.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss as to Plaintiffs Uyenoyama and Wilder's CLRA claims based on an inadequate showing of pre-sale knowledge and otherwise **DENIES** Defendant's motion to dismiss as to the other Plaintiffs on this ground, as the TSBs and consumer complaints are adequate to establish Defendant's knowledge of the Defect as to them.

2. *Defendant's Duty to Disclose the Defect*

Defendant argues that Plaintiffs do not allege facts establishing that Defendant had a duty to disclose the Defect based on its "superior knowledge" or active concealment of the Defect. Mot. at 14 (citing SAC ¶¶ 79, 222).

Under the CLRA, a manufacturer cannot be found liable for failure to disclose a defect "unless such omission (1) is 'contrary to a representation actually made by the defendant' or (2) pertains to a 'fact the defendant was obligated to disclose.'" *Smith v. Ford Motor Co.*, 462 F. App'x 660, 662 (9th Cir. 2011) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006)). A duty to disclose may arise if a plaintiff alleges "physical injury or . . . safety concerns posed by the defect." *Daugherty*, 144 Cal. App. 4th at 836 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1261–62 (Cal. Ct. App. 2006)). "[A] fact can give rise to a duty to disclose and an actionable omission if it implicates safety concerns that a reasonable consumer would find material." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013) (citing *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096–97 (N.D. Cal. 2007); *Daugherty*, 144 Cal. App. 4th at 836).

Defendant argues that "[P]laintiffs' thread-bare allegations of superior knowledge are unsupported," Mot. at 14, which is an argument that the Court has already addressed and disposed of in Section I.C.1. Defendant goes on to argue that Plaintiffs "have not alleged any facts to support an affirmative act of concealment by [Defendant]; they do not identify who specifically at [Defendant] was purportedly aware of any concealed facts, the source of that knowledge, or any actions [Defendant] took to conceal any facts." *Id.* Plaintiffs argue that Defendant actively concealed the Defect by implementing a practice of "replacing a defective part with an equally defective part." Opp'n at 14. Plaintiffs give examples of Defendant replacing the CUE with an equally defective part. *See, e.g.*, SAC ¶¶ 94c ("[The CUE screen] was replaced once before when I was still under warranty and now it's happened again."). This is sufficient to plead active concealment. *See Falk*, 496 F. Supp. 2d at 1097 (finding active concealment adequately pled when the defendant

replaced broken speedometers with equally defective ones, which "suggests that [the defendant] tried to gloss over the problems . . . [by] giving the impression that any defects were unique cases.").

Additionally, Plaintiffs allege that the Defect "poses a serious safety risk to drivers, who can become dangerously distracted." SAC ¶ 4. Plaintiffs claim the CUE display is the only method "for a driver to access and use the vehicle's safety, navigation, communications, and entertainment features." *Id.* ¶ 42. Additionally, the CUE is how a driver uses the "rear Vision Camera" when the vehicle is in reverse. *Id.* ¶ 50. The Court finds that Plaintiffs successfully showed that the Defect posed a genuine safety risk because the CUE's malfunctioning or failure while driving could distract the car's driver, and therefore put the car's occupants in danger.

Accordingly, the Court finds that Plaintiffs have adequately alleged that Defendant had a duty to disclose the Defect.

### 3. Timeliness

Defendant argues that Plaintiffs Goldstein, Sutton, Wilder, Uyenoyama, and Guzman's CLRA claims, and Plaintiffs Wilder and Uyenoyama's UCL claims, are time-barred because they did not bring their claims within the required three- and four-year period after purchase. Mot. at 16; *see* Cal. Civ. Code § 1783 (setting a three-year statute of limitations for actions under the CLRA); Cal. Bus. & Prof. Code § 17208 (setting a four-year statute of limitations for actions under the UCL). Because the Court has already dismissed Plaintiffs Wilder and Uyenoyama's UCL and CLRA claims, *see supra* Sections I.B, I.C.1, the Court will only consider the timeliness of Plaintiffs Goldstein, Sutton, and Guzman's CLRA claims. Plaintiff Goldstein purchased his vehicle in or around June 2016, SAC ¶ 103, Plaintiff Sutton purchased his vehicle on or around September 6, 2016, *id.* ¶ 111, and Plaintiff Guzman purchased his vehicle on March 31, 2016, *id.* ¶ 153. Plaintiffs argue that the discovery rule postpones the accrual of these Plaintiffs' CLRA claims. Opp'n at 16–19.

///

"In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C–05–04726 RMW, 2008 WL 4544441, *8 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (Ct. App. 1978)).  "The delayed discovery rule is available to toll the statute of limitations under the CLRA, UCL, and FAL." *Plumlee v. Pfizer, Inc.*, No. 13-CV-414-LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014).  "This rule applies even where plaintiff is prosecuting a class action." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (N.D. Cal. 2010) (citing *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 141, 160–61 (Ct. App. 1999) (applying the standard to a class action)).

Defendant argues that "Plaintiffs do not plead sufficient facts to invoke the discovery rule."  Mot. at 16; *see Garcia v. Gen. Motors LLC*, No. 118CV01313LJOBAM, 2018 WL 6460196, at *4 (E.D. Cal. Dec. 10, 2018) ("The discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner." (quoting *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014))).

Plaintiff Guzman alleges that "[a]t the time of purchase, [his] vehicle's CUE touchscreen did not exhibit any cracks or spider-webbing."  SAC ¶ 155.  He alleges that "[i]n or around January 2018, [he] first noticed spiderwebbing on the lower-right side of the CUE touchscreen."  *Id.* ¶ 156.  Similarly, Plaintiff Goldstein alleges that "[s]ince mid-2018," his CUE System was "unresponsive and . . . entirely inoperative from the screen."  SAC ¶ 106.  These facts are sufficiently detailed to provide Defendants notice of the time at and manner in which Plaintiffs Guzman and Goldstein discovered the Defect.  *See In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 884 (N.D. Cal. 2019) (discovery rule tolled CLRA claims where "[p]laintiffs did not have reason to discover the defects in their vehicles until they experienced adverse effects resulting from those defects").

///

Plaintiff Sutton, however, alleges he "delivered his vehicle" to a dealership for repair "[o]n or around August 2, 2019" because his "radio screen [was] not working . . . ."  SAC ¶ 115.  He complained that the screen "had cracked and bubbled."  *Id.*   Plaintiff Sutton does not allege when he first experienced issues with his CUE system.  *Id.*  Without more specific facts to identify when Plaintiff Sutton first discovered the issue, his CLRA claim is time-barred.  *See Aberin v. Am. Honda Motor Co.*, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) (finding allegations insufficient to invoke discovery rule where plaintiffs failed to allege when they discovered the defect).

Based on the foregoing, the Court **GRANTS** Defendant's motion to dismiss Plaintiff Sutton's CLRA claim and **DENIES** Defendant's motion to dismiss Plaintiffs Guzman and Goldstein's CLRA claim.

### D.    *Fraudulent Concealment*

The elements of a claim for fraudulent concealment are:

> (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage.

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, No. 17-cv-06656, 2019 WL 3000646, at *5 (C.D. Cal. May 22, 2019).  Actual reliance is an essential element for a fraudulent omission claim.  *Daniel*, 806 F.3d at 1225 (citations omitted).  Plaintiffs may prove that the omission was a substantial factor in their decision by proving "that, had the omitted information been disclosed, one would have been aware of it and behaved differently."  *Id.* (citing *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993)).

Defendant argues that the economic loss doctrine prohibits Plaintiffs from asserting a claim for fraudulent concealment to recover purely economic losses for the purchase of an allegedly defective product.  Mot. at 17–18.  Plaintiffs claim that their allegations are

based on Defendant's "intentional misrepresentations and omissions," and that "[t]he economic loss doctrine is inapplicable where 'the contract was fraudulently induced.'" Opp'n at 21 (quoting *Robinson Helicopter v. Dana Corp.*, 34 Cal. 4th 979, 989–90 (2004)).

Under the economic loss doctrine, "plaintiffs may recover in tort for physical injury to person or property, but not for 'purely economic losses that may be recovered in a contract action.'" *Lusinyan v. Bank of Am., N.A.*, No. CV-14-9586 DMG (JCX), 2015 WL 12777225, at *4 (C.D. Cal. May 26, 2015) (quoting *S.F. Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995)). "California courts recognize several exceptions to the economic loss rule, including violations of certain duties independent of the parties' contractual duties." *Arechiga v. Ford Motor Co.*, No. SACV1701915AGDFMX, 2018 WL 5904283, at *4 (C.D. Cal. Apr. 23, 2018) (citing *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Grp.*, 660 F. Supp. 2d 1123, 1180 (C.D. Cal. 2009)). Fraud claims based on affirmative misrepresentations may not be subject to the economic loss rule. *Robinson Helicopter*, 34 Cal. 4th at 989–93.

The narrowly tailored exception to the economic loss rule articulated in *Robinson Helicopter* does not extend to fraudulent omission claims. *Id.* at 993 (holding the "narrow" exception to the economic loss rule is "limited to a defendant's *affirmative misrepresentations* on which a plaintiff relies and which expose a plaintiff to liability for personal damages." (emphasis added)). Plaintiffs have stated that this is a fraud in the omission case, and therefore the exception based on intentional misrepresentations does not apply. *See* Opp'n at 5 ("[S]ince this is an omissions case, there is no specific misrepresentation to allege."); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 2020 WL 5267567, at *8 n.5 (collecting cases that applied the economic loss rule to fraudulent omission claims, all of which found the narrow *Robinson Helicopter* exception inapplicable).

Here, Plaintiffs have not alleged affirmative misrepresentations. The economic loss doctrine therefore bars Plaintiffs' fraudulent concealment claim. Defendant's motion is **GRANTED** as to this claim.

## II.     Plaintiffs' Implied Warranty Claims

### A.     *Lack of Privity*

Defendant moves to dismiss Plaintiffs' implied warranty claims under California Commercial Code § 2314 for failure to properly allege vertical privity between Defendant and Plaintiffs.  Mot. at 18.  Plaintiffs argue that California courts have recognized an exception to the privity requirement for third-party beneficiaries, and that privity is not required when a plaintiff "relies on written labels or advertisements of a manufacturer." Opp'n at 22–23.

"Under California Commercial Code section 2314 . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  A buyer and seller stand in privity if they are in adjoining links of the distribution chain.  *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988).  "California district courts are split on the application of the third-party beneficiary exception to the rule of privity." *Snyder v. TAMKO Bldg. Prod., Inc.*, No. 1:15-CV-01892-TLN-KJN, 2019 WL 4747950, at *7 (E.D. Cal. Sept. 30, 2019) (citations omitted).  "Some courts have declined to recognize the third-party beneficiary exception because *Clemens* did not expressly recognize it and refused to create any new exceptions to privity."  *Bhatt v. Mercedes-Benz USA, LLC*, No. CV 16-03171-TJH (RAOx), 2018 WL 5094932, at *2–*3 (C.D. Cal. Apr. 16, 2018) (citations omitted).  The Ninth Circuit has recognized several exceptions to this privity requirement, such as when "the plaintiff relies on written labels or advertisements of a manufacturer," and certain cases involving "foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser."  *Clemens*, 534 F.3d at 1017.

The Court previously dismissed Plaintiffs' UCC claim for failure to properly allege privity, holding that "the Ninth Circuit has made it clear that under California Commercial Code § 2314 a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant."  Order at 20 (ECF No. 48).  However, Plaintiffs have now adequately pled reliance on Defendant's advertisements and written labels such

that the exceptions articulated in *Clemens* applies.  *See* SAC ¶ 38.  Plaintiffs allege that they received "brochures and other similar materials with important, material information regarding the vehicles from [Defendant]."  *Id.*

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' implied warranty claims based on failure to properly allege vertical privity between Defendant and Plaintiffs.

### B.      *Plaintiffs Uyenoyama and Wilder*

Next, Defendant moves to dismiss Plaintiffs Uyenoyama and Wilder's implied warranty claims under the Song-Beverly Consumer Warranty Act and California Commercial Code § 2314, arguing that they are time-barred.  Mot. at 18.  Plaintiffs argue that they have now pled "sufficient facts for tolling under fraudulent concealment."  Opp'n at 24.  The Court disagrees with Plaintiffs and finds the claims time-barred as pled.

Song-Beverly's statute of limitations is four years, and the discovery rule does not apply to toll the statute of limitations.  *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 291–92 (Cal. Ct. App. 2009).  California Commercial Code § 2314's statute of limitations is also four years.  *See* Cal. Com. Code § 2725.

Plaintiffs argue that these limitations should be tolled because Plaintiffs have adequately pled fraudulent concealment.  Opp'n at 24.  Under the doctrine of fraudulent concealment, "the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it."  *Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 99 (1976).  The purpose of this doctrine is "to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory."  *Regents of Univ. of Cal. v. Superior Court*, 20 Cal. 4th 509, 533 (1999).  Where a plaintiff relies on fraudulent concealment to toll the statute of limitations, "the plaintiff must show (a) the substantive elements of fraud, and (b) an excuse for late discovery of the facts."  *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011).  Courts have

utilized the doctrine of fraudulent concealment to toll the statute of limitations for claims brought under both Song-Beverly and California Commercial Code § 2314. *Roberts v. Electrolux Home Products, Inc.*, CV 12-1644 CAS VBKX, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) (tolling claims under § 2314 due to fraudulent concealment); *Philips v. Ford Motor Co.*, 14-CV-02989-LHK, 2016 WL 1745948 (N.D. Cal. May 3, 2016) (tolling claims under Song-Beverley).

Here, the Court has already determined that Plaintiffs have not adequately pled the substantive elements of fraudulent concealment for Plaintiffs Uyenoyama and Wilder. *See supra* Section I.C.1; *see also Mui Ho*, 931 F. Supp. 2d at 999 (stating the elements of fraud by omission and violation of the CLRA are the same). Accordingly, the Court concludes that Plaintiffs have not pled sufficient facts to toll the statute of limitations and **GRANTS** Defendant's motion to dismiss Plaintiffs Uyenoyama and Wilder's implied warranty claims under Song-Beverly and California Commercial Code § 2314.

## III.   Plaintiffs' Unjust Enrichment Claim

Defendant argues that Plaintiff's unjust enrichment claim is not available because there is an adequate legal remedy. Mot. at 20–21. Plaintiffs counter that they "may plead, at this early stage, alternative avenues of relief." Opp'n at 25.

The elements of an unjust enrichment claim are: (1) receipt of a benefit, and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). However, "[u]njust enrichment is an equitable rather than a legal claim," and "[i]t is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law[.]" *McKesson HBOC, Inc. v. N.Y. State Common Retirement Fund*, 339 F.3d 1087, 1091 (9th Cir. 2003); *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)) (alterations in original).

At this early stage, the Court is inclined to allow Plaintiffs to plead alternative avenues for relief. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency."); *see, e.g., Colucci v. ZonePerfect Nutrition Co.*,

No. 12-2907-SC, 2012 WL 6737800, at *10 (N.D. Cal. Dec. 28, 2012) ("[C]laims for restitution or unjust enrichment may survive the pleadings stage when pled as an alternative avenue of relief, though the claims, as alternatives, may not afford relief if other claims do."). However, similar to Plaintiffs' UCL claim, *see supra* Section I.B, Plaintiffs have failed to show entitlement to equitable relief. Plaintiffs do not allege that their legal claims would not provide them with an adequate remedy. *See, e.g.*, *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *14 (C.D. Cal. Nov. 23, 2020) ("[A] party does not avoid federal equitable principles merely because the equitable claim is pled in the alternative." (citing *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750-VAP (ADSx), 2020 WL 4187918, at *8 (C.D. Cal. Apr. 10, 2020))).

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' unjust enrichment claim.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss. Specifically, the Court rules as follows:

1. Defendant's motion to dismiss Plaintiffs' UCL claim (Count 4) is **GRANTED**.

2. Defendant's motion to dismiss Plaintiffs' CLRA claim (Count 1) is **GRANTED** as to Plaintiffs Uyenoyama, Wilder, and Sutton, and **DENIED** as to Plaintiffs Goldstein, Rodriguez, and Guzman.

3. Defendant's motion to dismiss Plaintiffs' fraudulent concealment claim (Count 5) is **GRANTED**.

4. Defendant's motion to dismiss Plaintiffs' implied warranty claims (Counts 2 and 3) is **DENIED** as to Plaintiffs Goldstein, Sutton, Rodriguez, and Guzman and **GRANTED** as to Plaintiffs Uyenoyama and Wilder.

5. Defendant's motion to dismiss Plaintiffs' unjust enrichment claim (Count 6) is **GRANTED**.

///

All claims dismissed in this order are dismissed **WITHOUT PREJUDICE**. Plaintiffs may file an Amended Complaint within <u>thirty (30) days</u> of the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated:  February 3, 2021

Hon. Janis L. Sammartino
United States District Judge

3:19-cv-1778-JLS-AHG