1
2
3
4
5
6
7
8
9        UNITED STATES DISTRICT COURT
10       SOUTHERN DISTRICT OF CALIFORNIA
11

12   MATT GOLDSTEIN, *et al.*, individually,    Case No.:  3:19-cv-01778-LL-AHG
     and on behalf of a class of similarly
13   situated individuals,                       **STIPULATED ESI PROTOCOL**

14                            Plaintiffs,

15   v.                                          **[ECF No. 91]**

16   GENERAL MOTORS LLC,

17                            Defendant.

18
19
20
21
22
23
24
25
26
27
28

Before the Court is the parties' Joint Motion and Proposed Order re Stipulated Protocol Regarding Discovery of Electronically Stored Information ("Stipulated ESI Protocol"). ECF No. 91. The Court has reviewed the parties' Stipulated ESI Protocol and finds good cause to **GRANT** the Joint Motion. Accordingly, pursuant to the following agreement of counsel for Plaintiffs and counsel for General Motors LLC, ("Defendant" or "GM"), the Court hereby enters this Order regarding the protocol for document discovery:

**1.** SCOPE

1.1   The procedures and protocols set forth in this ESI Protocol shall govern the search, disclosure, and format of discovery material produced for use in this litigation. This Order is intended to streamline eDiscovery to best carry out the requirements set forth in the local rules and the Federal Rules of Civil Procedure.

1.2   The parties shall meet and confer to try to resolve any disputes that may arise under this ESI Protocol prior to seeking assistance from the Court. Any requesting or producing party may seek to deviate from this ESI Protocol, provided, however, that no requesting or producing party may seek relief from the Court concerning compliance with the ESI Protocol without first describing the deviation in writing and then engaging in good faith meet and confer discussion on the proposed deviation.

1.3   The parties acknowledge that they have an obligation to take reasonable steps to preserve potentially discoverable materials. The parties have discussed their preservation obligations and agree that preservation of potentially relevant materials is reasonable and proportionate.

1.4   Each requesting party or producing party shall designate individual(s) to act as eDiscovery Liaison. The designated eDiscovery Liaison shall be knowledgeable about the e-discovery efforts in this litigation and be, or have reasonable access to those who are, familiar with his or her client's respective electronic systems and capabilities in order to explain those

systems and promptly answer relevant questions concerning the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, relevant information retrieval technology, and search methodology.

1.5   The parties agree that to the extent possible, this ESI Protocol shall govern non-party productions.

1.6   Discovery in this case is being coordinated with discovery in *Robinson v. General Motors LLC*, Case No. 1:20-cv-00663 (D. Del.). A document produced in that matter shall be deemed produced in this matter and vice versa.

## 2. DEFINITIONS

2.1   "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure. For avoidance of doubt, the term "document" shall include hard copy documents and ESI (electronically stored information).

2.2   "Hard copy document" means a document that was maintained in paper or other tangible, non-electronic form.

2.3   "Document family" means a collection of pages or files maintained together constituting a logical single communication of information but consisting of more than a single stand-alone record. Examples include a fax cover, the faxed letter, and an attachment to the letter - the fax cover being the "parent," and the letter and attachment being a "child," or an email and associated attachments, or a presentation with embedded files.

2.4   "Archival systems" refers to long-term repositories for the storage of records that preserve the content of the documents, prevent or track alterations, and control access.

2.5     "Backup systems" refers to computer systems used to store copies of information to permit recovery of the information in the event of loss or damage to the original data.

2.6     "Custodian" shall mean any individual of a producing party, as identified and agreed by the parties, as likely having possession, custody, or control of potentially relevant documents.

2.7     "Custodial data source" means any data source used for business purposes in or on which custodian may store potentially relevant documents including, but not limited to, computers, laptops, tablets, and/or mobile devices regularly used for business purposes, email (whether stored locally or centrally), shared network servers, shared or individual network folders, cloud storage systems, structured data systems, or social media.

2.8     "Non-custodial data source" means any data source that is not kept or maintained by any particular custodian but which is in the custody or control of a producing party and may contain relevant documents, including data sources used by any department, business unit, or division of a producing party, and shared storage systems that may contain relevant documents.

2.9     "Metadata" means: (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

2.10    "Search term" means a word or a combination of words or phrases designed to capture potentially relevant documents and includes strings of

4

words or phrases joined by proximity and Boolean connectors or other syntax.

2.11 "Structured data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as SAP, JD Edwards, Microsoft Dynamics, Oracle, SQL, Microsoft Access) or data sets, according to specific form and content rules as defined by each field of the database.

2.12 "Unstructured data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, including but not limited to, word processing documents, slide presentations, email, PDFs, spreadsheets, and webpages, blogs, image files, instant messages, audio and video files, and others of similar variable format.

**3.** PRODUCTION FORMAT. Productions will comply with Exhibit A: Specifications for the Production of Unstructured Data, as well as the below parameters, except that the production format for each source of structured data will be discussed and agreed to separately by the parties.

3.1 <u>De-Duplication</u>: A producing party shall de-duplicate documents horizontally (globally) across the population of records. In de-duplicating horizontally: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all Custodians who were in possession of a de-duplicated document, the directory structure where the Custodian stored the de-duplicated document, and all other sources of the document must be identified in the "Custodian – All / All Files Paths" metadata field specified in Exhibit A.

3.2 <u>E-mail Thread Suppression:</u> Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread, provided however that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate or lesser-included email of an email or email thread that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. To the extent a producing party intends to suppress lesser-included emails, they shall utilize industry standard email threading protocols in Relativity for doing so. If an email is logged in a privilege log then the producing party must either: (a) log each individual email within the thread that is purportedly privileged or (b) produce the entire email thread including all metadata with the purportedly privileged portions redacted.

3.3 <u>Unitization:</u>  The Parties will make reasonable efforts when scanning hard copy documents, such that distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. The producing party shall take reasonable steps to both physically and logically unitize hard copy documents.  However, to the extent hard copy documents were previously unitized and maintained in a different format, the Parties will not re-scan or re-unitize such documents for purposes of producing them here.

3.4 <u>Redaction of Documents for Privilege:</u> Documents may be redacted to protect information subject to attorney-client privilege, work product immunity, a reasonably applicable legal prohibition against disclosure, or any other privilege or immunity, or as allowed by Federal Rule of Civil Procedure 5.2. Additionally, Defendant may redact Highly Confidential information in the following two instances. *First*, if it is (1) irrelevant and

nonresponsive (*i.e.*, the information is not related in any way to CUE systems on subject GM vehicles) and, (2) the information involves confidential proprietary information of a nonparty that GM is bound by agreement, order, or law to protect, and (3) it is readily apparent that the information falls within (1) and (2). If it is not readily apparent to Plaintiffs that redacted information is irrelevant under these criteria, the Parties must meet and confer before bringing any dispute under this paragraph before the Court. *Second*, in the event the Producing Party wishes to redact a document that contains allegedly irrelevant information due to concerns that the document will be used as a basis for the Receiving Party to file a separate, unrelated lawsuit, the Parties will meet-and-confer to discuss a procedure for completing such redactions within 10 days following each production of documents made to the Receiving Party in which the Producing Party withholds documents that it wishes to so redact. The Parties must meet and confer before bringing any dispute under this paragraph before the Court. In the event a document is redacted, the full text should be replaced with OCR text that excludes the redacted material.

a) When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable and a production Load File field should be populated to indicate the document contains a redaction.

b) If a document to be produced in native format requires redaction then it should be produced in redacted native format. The native file should show the word "redacted" where applicable and a production Load File field should be populated to indicate the native file contains a redaction.

c) Metadata may also be redacted from the load file where a document or document family is redacted or withheld if production of such metadata would reveal the information redacted pursuant to this

1    Paragraph.

2    3.5    <u>Text Files</u>. Each document produced under this ESI Protocol shall be
3    accompanied by a single, multipage text file containing all of the text for
4    that document (as opposed to one text file per page of such document).
5    Each text file shall be named using the Bates number of the first page of
6    the corresponding production item. The text of each file shall be extracted
7    directly from the native file. To the extent that is not technically possible
8    (e.g., the underlying native file is an image file), the text for each item shall
9    be generated by applying OCR to the native file. The full text shall be
10    provided on a document-level basis in an appropriately formatted text file
11    (.txt) that is named to match the first Bates number of the document. Text
12    files shall be provided in a "text" folder. To the extent that a document is
13    redacted, the text files shall not contain the text of the redacted portions but
14    shall indicate where the redactions were made (e.g., with the notation
15    "redacted").

16    3.6    <u>Attachments</u>: Email attachments and embedded files must be mapped to
17    their parent document by the Bates number by including a "Beg Attach"
18    field designating the beginning of each such attachment and "End Attach"
19    field designating the end of each such attachment. If attachments and
20    embedded files cannot be separated from their parent documents, then
21    "Beg Attach" and "End Attach" fields listing the unique beginning and
22    ending Bates number for each attachment or embedded document must be
23    included. Non-substantive automatically-generated embedded files, such as
24    logos, embedded, non-substantive formatting files such as .ole or .dll
25    formats, or confidentiality legends need not be produced as separate
26    attachments. To the extent they are maintained together, all documents in a
27    document family shall be consecutively Bates number stamped with the
28    child documents produced immediately after the parent document.

3.7 <u>Password Protected Files</u>: The producing party shall make reasonable efforts to ensure that all encrypted or password-protected documents are successfully processed for review and production under the requirements of this ESI Protocol, and the decrypted document is produced. To the extent such documents are not successfully processed, the producing party agrees to: (a) produce a slipsheet for each encrypted or password protected document that cannot be successfully processed indicating that the document cannot be decrypted; and (b) provide the metadata for the document required by Exhibit A to the extent it can be reasonably extracted from the file in its encrypted form.

3.8 <u>Embedded Documents</u>: Embedded documents (e.g., a spread sheet embedded within a word processing document) will be extracted, produced as an independent document, and related back to the respective top-level parent document (e.g., standalone file, email message, tec.) via the "Beg Attach" and "End Attach" fields referenced in Exhibit A. Related embedded documents will be produced within a continuous Bates number range.

3.9 <u>Compressed and Container Files</u>: Compression file types (e.g., .CAB, .GZ, .RAR, .ZIP), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this ESI Protocol.

**4.** STRUCTURED DATA FORMAT

4.1 Where a discovery request requires production of structured data, in lieu of producing in accordance with Exhibit A, the producing party shall identify such potentially relevant structured data sources within a reasonable period after receiving the discovery request, and the requesting party and

3:19-cv-01778-LL-AHG

producing party, as appropriate, shall meet and confer on the content and format of data extraction from such structured data source(s).

4.2   The requesting party and producing party shall, in good faith, make disclosures that are necessary to ensure meaningful meet and confer discussions regarding content and format of the production and the process for data extraction. The parties shall meet and confer concerning what disclosures, if any, are necessary (for example, the provision of data dictionaries, schema, and/or data samples to disclose the structure, fields, and other information available in the data).

**5.** DISCLOSURES AND PROCESS REGARDING SELECTION OF CUSTODIANS AND SOURCES OF DOCUMENTS

5.1   <u>Process for Determination of Custodians</u>

a)   Within a week after the producing party serves its written responses and objections to document requests, the producing party shall disclose the 10 custodians most likely to have discoverable information in their possession, custody, or control. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the litigation.

b)   The parties shall attempt through a process of cooperative negotiation to promptly reach agreement on custodians. The producing party shall make good faith efforts to provide reasonable additional information concerning potential custodians as necessary to facilitate and accelerate these discussions.

5.2   <u>Process for Determination of Custodial and Non-Custodial Data Sources</u>

a)   The producing party shall make reasonably diligent efforts to ascertain, and collect data from, potentially relevant custodial data sources.

b)   The producing party shall also make reasonably diligent efforts to

ascertain, and collect data from, potentially relevant non-custodial data sources.

c)   In the event that a party objects to collecting data from a potentially relevant custodial or non-custodial data source, the parties shall attempt through a process of cooperative negotiation to promptly reach agreement on such an objection.

5.3   In the event that a party becomes aware of the loss or failure to preserve responsive discovery materials occurring after the filing of this action, it shall take steps to promptly notify the requesting party.

**6.** SEARCH METHODOLOGY FOR UNSTRUCTURED DATA

6.1   <u>Search Methodology Disclosures</u>. The parties hereby agree that negotiations regarding search terms and other filtering methods are intended to be a cooperative and iterative process, involving a good faith exchange of information and proposals to facilitate the negotiations. If a producing party intends to use search terms or technology-assisted review ("TAR") to search Unstructured Data collected from a given custodian or set of custodians for potentially responsive documents, the parties shall meet and confer regarding the search terms or TAR the producing party proposes to employ to identify potentially responsive documents, and make such disclosures regarding their proposed search methodology that will permit the requesting party to evaluate the proposed methodology and enable meaningful meet and confers. Such disclosures should include:

a)   An initial list of the search terms and any other filtering methods that the producing party intends to use on the corpus of collected documents and, to the extent applicable, the proposed sequence.

b)   Upon receipt of a party's written responses and objections to requests for production of documents, the parties shall promptly meet and confer to attempt to reach agreement on the search

methodology. To facilitate such meet and confers, the producing party shall propose an initial set of search terms. The parties shall then discuss, for example, among other matters, whether the proposed search terms include relevant terminology, or nicknames, code words, euphemisms, acronyms, slang, terms of art, email addresses, and other language likely to be contained in responsive documents; appropriate synonyms for proposed search terms and variations on search syntax, for example, using wildcard characters, truncation, stem words, fuzzy logic and proximity terms to address over and under inclusiveness; and whether any appropriate testing and quality control measures were conducted or will be conducted to evaluate the sufficiency of the search terms.

c)   Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed.

d)   If a party intends to use TAR, it shall disclose any such intent within 14 days following an agreement on search terms. In the event that a producing party discloses an intent to use TAR following an agreement on search terms, the receiving party reserves the right propose changes to the previously-agreed search terms, or to object to the use of search terms altogether, in light of the use of TAR. Plaintiffs have indicated that, should GM disclose an intent to use TAR, Plaintiffs will oppose the use of search terms in addition to TAR. GM disagrees and contends that the use of search terms in addition to TAR is generally appropriate, but GM states that it currently does not anticipate using TAR in this action.

e)   To the extent that a producing party asserts that any of the search

terms proposed by a requesting party are unreasonably overbroad or otherwise objectionable, the objecting party shall provide sufficient information to enable meaningful meet and confer discussion.

f) With respect to any search term for which the requesting party believes there exists a modification that will reduce the number of documents returned by the search term, the parties will meet and confer to discuss in good faith any such modification.

g) If a producing party elects to use technology assisted review (TAR) then it shall be disclosed prior to use of such TAR technology by the producing party.

6.2 <u>Process for Other Proposed Filtering Methods</u>. If a producing party discloses that it intends to use any other filtering methods besides applying search terms to specified custodial and non-custodial data sources as a means of including or excluding documents to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be reviewed for responsiveness, prior to use of such tool the parties shall meet and confer as to (1) the appropriateness of filtering methodology proposed; (2) the custodial data sources and non-custodial data sources against which such analytics are proposed to be run; (3) the methodologies being deployed; (4) the quality control measures used to validate the results, (5) any documents, document types, file types or other categories that the producing party proposes to exclude from the process and the method of identifying such documents to be excluded, (6) all other disclosures that are reasonably necessary for the requesting party to evaluate the proposed filtering method.

**7.** PRIVILEGE LOGS

7.1 Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, the parties hereby agree that a producing party may redact or, to the extent

necessary, withhold a document if it is protected by attorney-client privilege, the work-product doctrine, or any other reasonably applicable privilege from disclosure.

7.2    Privilege logs shall be provided in Excel format and shall contain at least the following information for each responsive document withheld or redacted pursuant to section 3.4: (i) a sequential number associated with each privilege log record; (ii) the date of the document; (iii) the Bates numbers; (iv) the identity of persons who sent (and, if different, the identity of all persons who authored or signed) the document and the addressees, recipients, copyees, and blind copyees (with senders, signers, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories), and identification of which of them are attorneys; (v) a description of the subject matter of the information contained in the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (i.e., attorney-client privilege or work product doctrine, and if such other privilege or immunity is asserted it shall be separately identified); and (vii) an indication of whether the document has been redacted and produced or withheld in its entirety.

a)    As an alternative to manually entering the information required in the section above, a portion of each producing party's privilege log may be generated by exporting objective metadata from the review tool used to identify privileged or work-product protected documents where the objective metadata provides the information required under the section above. Such metadata shall include the following: (1) a unique privilege log identifier or, in the case of redacted documents, the Bates number assigned to such document; (2)

14

author/custodian; (3) From; (4) To; (5) CC; (6) BCC; (7) date sent, received, or created; (8) document type (e.g., message, attachment, loose file); (9) file name, (10) file size, and (11) page count.

7.3   Should a receiving party be unable to ascertain whether or not a document contained on the log is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the parties shall meet and confer to attempt to cooperatively resolve the dispute.

7.4   Privilege logs shall be produced within a reasonable time following production of the first production volume and shall be supplemented within a reasonable time following each subsequent production where production occurs on a rolling basis, or by another date upon agreement of the requesting and producing parties. The parties, as appropriate, shall meet and confer to reach agreement regarding what constitutes such reasonable time.

**8.** MODIFICATION

8.1   This Order may be modified by agreement of the parties or by the Court for good cause shown.

**IT IS SO ORDERED.**

Dated:  April 25, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge

# *Exhibit A: Specifications for the Production of Documents*

## 1.    Cover Letter and Delivery Media

Each production shall include a cover letter or cover email with information sufficient to: (i) identify all accompanying delivery media; (ii) identify the production on such media by assigning a Volume ID; and (iii) include the Bates range for the documents produced in each volume. Delivery media shall comply with the specifications below.

|  | Requirement: |
|---|---|
| **Delivery Media:** | USB hard drive, DVD and/ or CD-R (ISO9660 format) or a secure FTP site |
| **Encryption:** | All media should be encrypted |
| **Volume ID:** | CD set number, e.g. VOL1 |
| **Physical Media Label:** | TOP: <production name, volume number> MIDDLE: <Bates range> BOTTOM: <date> |
| **Number of Copies:** | 1 |

## 2.  Deliverable Includes

| Item: | Requirement: |
|---|---|
| **a) Load File (Metadata file)** | Concordance (.dat) |
| **b) Image File** | Opticon (.opt) |

16

| Item: | Requirement: |
|---|---|
| **c) Images** | • Group IV TIFF, 300 DPI, single-page TIFF images<br>• Color documents should be produced in JPEG format<br>• All black/white images must be in 1-bit TIFF images and color documents must be in 24-bit JPEG files<br>• All documents referenced in a production image load file shall have all corresponding images, text, and data<br>• All images in the delivery volume shall be contained in the image load file<br>• The image key shall be named the same as the Bates number of the page<br>• Every image will contain a unique Bates number, and a prefix that identifies the party producing the document<br>• The Bates numbers shall be sequential, and in a consistent font type, size, and spacing.<br>• Image file names cannot contain spaces, (e.g., the correct format would be AB00000001 not AB 00000001).<br>• If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. |
| **d) Text Files** | • Extracted text of a document must be delivered on a document level<br>• A text file will be provided for every document<br>• For any document without extracted text or OCR, a text placeholder file will be inserted<br>• All text for a single document should be contained within one file with subfolders<br>• OCR shall be performed:<br>   o For all redacted images<br>   o For all non-searchable electronic documents (including scanned hard copy documents) for which the text cannot be extracted.<br>   o Branding and endorsement shall be performed *after* OCR in the format agreed to by the parties.<br>• All text files should be named after the beginning Bates number of the document (ProdBatesBeg.txt) |

| Item: | Requirement: |
|---|---|
| **e) Native Files** | • Native file format for:<br>  ○ Spreadsheets (e.g., MS Excel, Lotus 123, etc.)<br>  ○ Presentations (e.g., MS PowerPoint, etc.)<br>  ○ Database (e.g., MS Access, QuickBooks, etc.)<br>  ○ Drawing (e.g., Visio, CAD, etc.)<br>  ○ Audio and Video (e.g., QuickTime Movie, Windows Media Video Voicemails)<br>• All Native files should be named after the beginning Bates number of the document (BEGDOC.xls).<br>• Documents produce in native format should be produced with a single page TIFF placeholder endorsed the Prod Beg Bates and the following language on the placeholder: "Document produced in native format."<br>• Documents produced in native format should have a file path value for the native file in the "Native Link" metadata field. |
| **f) Exception Handling** | A single-page TIFF placeholder should be used for each document within a family that was not converted and endorsed with the Prod Bates Beg and exception reason. |
| **g) Display Hidden Text** | Maintain and display hidden text (i.e., force on all hidden data). For example, track changes in MS Word, speaker notes in MS PowerPoint, and hidden rows in MS Excel. |
| **h) Maintain Date and Time** | Maintains the date/time of the document as it was last saved, edited, etc., not the date of collection or processing (I.e., force off auto data). |

## 3. Directory Structure

The directory structure will contain the following main folders: DATA, NATIVE, TEXT, and IMAGES. Ex: Vol1\ NATIVE\000X\

| | Requirement: |
|---|---|
| **DAT File Location** | In subfolder: \DATA |
| **OPT File Location** | In subfolder: \DATA |
| **Images** | In subfolder: \IMAGES<br><br>In sequentially numbered subfolders containing<br><br>approximately 1000 images each (i.e. ..\Images\001 ) |

| Text Files | In subfolder: \TEXT |
|---|---|
| Native Files | In subfolder. i.e. \NATIVE |

## 4.  Delimiters

| | Requirement | |
|---|---|---|
| Field Separator | ASCII Code 20 ( ) | Separates load file columns |
| Field Values | ASCII Code 254 (þ) | Marks the beginning and end of each load file field (also known as a text qualifier) |
| Multi-value | ASCII Code 059 (;) | Separates distinct values in a column. This delimiter is only used when importing into a Relativity multi-choice field |
| Newline | ASCII 174 Code (®) | Marks the end of a line in any extracted or long text field |
| Null Fields | | If a Field has no value, leave blank |

## 5.  Metadata

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| AttachCount | Number of attachment(s) | NUMERICAL | Populated for only. | Populated |
| Author | Original composer of document. | TEXT | Populated attachments and loose files. | |
| Confidentiality | Confidential status of document. | TEXT | Populated for messages, attachments and loose files. | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Conversation ID** | Email thread created by the email system. This is a 44-character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward of an email. | TEXT | Populated for messages only. | |
| **Custodian or Source** | Name of custodian who possessed the document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Custodian – All / All File Paths** | Name of all custodians who possessed the document and/or the location of each file, for duplicate custodians, prior to de-duplication | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Date Created** | Date from the date created property extracted from the original file or email message. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Last Modified** | Date from the modified property of a document, representing the date and time that changes to the document were last saved. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Date Received** | Date that the email message was received (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **Date Sent** | Date that the email message was sent (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **DocType** | Populated with: Email, Attachment, eDocPaper | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Email BCC** | Recipients of 'blind carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email CC** | Recipients of 'carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email From** | Originator of the email message. | TEXT | Populated for messages only. | |
| **Email Subject** | Subject of the email message. | TEXT | Populated for messages only. | |
| **Email To** | List of recipients or addressees of the email message. | TEXT | Populated for messages only. | |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **File Extension** | Three (or more) character extension of the document that represents the file type to the Windows Operating System. Examples are PDF, DOC, or DOCX. The file extension is identified by the file header vs. the file extension of the file name itself. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Name** | Original name of the file. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Size** | File size in kilobytes of native document. | DECIMAL | Populated for messages, attachments, and loose files. | |
| **MD5 Hash Value** | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm | TEXT | Populated for messages, attachments and loose files. | |
| **Original Folder Path** | Original folder path of file or folder name for paper documents. | TEXT | Populated for messages, attachments and loose files. | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Prod Bates Beg** | Beginning Bates number, or production number, on first page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg Attach** | First Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Prod Bates End** | Bates number, or production number, on last page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates End Attach** | Last Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Redactions** | Redaction status of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Time Created** | Time from the Date Created property extracted from the original file or email message. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Last Modified** | Time from the Modified property of a document, representing the date and time that changes to the document were last | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| | saved. | | | |
| **Time Received** | Time that the email message was received (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Time Sent** | Time that the email message was sent (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Title** | Title information saved in metadata with document. | TEXT | Populated for attachments and loose files. | |
| **Native Link** | Link to Native File.<br><br>Native files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.xls). | TEXT | Populated for attachments and loose files. | Populated |
| **Text Link** | Link to Text Files.<br><br>Text files should be named the same as | TEXT | Populated for attachments and loose | |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| | the beg doc and delivered in the same folder as the images (e.g., ABC0000001.txt). | | files. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28